IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STRATEGIC REIMBURSEMENT, INC., as Successor-In-Interest to Strategic Reimbursement Services, Inc., <br><br> Plaintiff, <br><br> v. <br><br> HCA, INC., f/k/a Hospital Corporation of America, <br><br> Defendant. | No. 06 C 6501 <br><br> Judge Robert W. Gettleman |

## **MEMORANDUM OPINION AND ORDER**

## **INTRODUCTION**

Plaintiff, Strategic Reimbursement, Inc. brought a four count complaint against defendant, HCA Inc., in the Circuit court of Cook County, Illinois, alleging breach of an express contract, breach of an implied in fact contract, unjust enrichment, and breach of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et. seq., in counts I through IV, respectively. Defendant removed the case to this court on diversity grounds, moved to dismiss the first three counts for failure to state a claim under Fed.R.Civ.P. 12(b)(6), and then moved to dismiss Count IV for failure to state a claim under Fed.R.Civ.P. 12(b)(6), and for failure to plead fraud with the particularity required under Fed.R.Civ.P. 9(b). For the reasons below the motion is denied in part and granted in part.

# FACTS[1]

Plaintiff, Strategic Reimbursement, Inc. ("SRI"), is an Illinois corporation that provides management and consulting services. SRI assumed all the rights and obligations of Strategic Reimbursement Services Inc. ("SRS") in June of 2000 after SRS was involuntarily dissolved. As alleged in the complaint, defendant, HCA, Inc., is a Tennessee corporation that provides health care services. Defendant is the successor in interest to both Galen Health Care, Inc. ("Galen") and Columbia Hospital Corporation ("Columbia"), and is responsible for all debts and obligations of the aforementioned companies.

Plaintiff entered into a written contract with Galen on July 23, 1995, ("Phase I Contract") to identify additional reimbursement through the application of Medicare for a fee of 25% of any reimbursement generated after the cost report settlement by an intermediary. Plaintiff also entered into a written contract with Columbia/HCA on October 18, 1995 ("Phase II Contract") for the same purpose.

Plaintiff reviewed various hospitals operated by defendant and identified additional reimbursements due to defendant from Medicare. Plaintiff reviewed approximately 102 hospitals for six years and identified over 700 positive issues for reimbursement worth $31,118,066.00. As part of this process, plaintiff used defendant's cost reports, financial statements, and other hospital related data to calculate and find the additional reimbursement from the Government due to defendant. After these costs were settled under the Phase I and Phase II contracts, plaintiff sought payment of $7,779,667.00, representing 25% of the

---

[1]The facts as stated come from the complaint and for the purposes of this motion, we take them to be true. Cler v. Illinois Educ. Ass'n., 423 F.3d 726, 729 (7th Cir. 2005).

$31,118,066.00 reimbursement. Defendant refused to pay it, stating that it never received any "actual Medicare monies" per the cost reports as a result of plaintiff's contractual activities.

During the time period that plaintiff was performing its obligations under the contracts, the United States Government sued defendant for approximately $1,000,000,000.00, alleging systemic fraud by defendant concerning government reimbursements. According to plaintiff, defendant used plaintiff's work to settle that suit, saving defendant $800,000,000.00.

## **DISCUSSION**

### **Count I—Breach of Contract**

In Count I plaintiff alleges that defendant breached the Phase I and Phase II contracts by refusing to pay. Defendant has moved to dismiss this count for failure to state a claim, arguing that plaintiff has not and cannot allege that any reimbursement was "generated." Further, defendant asserts that plaintiff's complaint is faulty because it does not allege that an "Intermediary actually settled the Government's fraud claim against [defendant]" and, therefore, a condition of the contract was not met. The fee provisions of the two contracts state in relevant part: "The fee for this review will be 25% of any additional reimbursement generated. Such fees will be payable upon the completion and settlement of the cost reports and/or issues by the intermediary." Defendant argues that because the conditions of the contract were not met and because plaintiff did not allege certain conditions in the contract, it has no basis for a claim against defendant.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading "requires 'only a short and plain statement of the claim showing that the pleader

is entitled to relief.'" Erickson v. Pardus, __U.S. __, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955, 1964 (2007). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Moranski v. General Motors Corp., 433 F.3d 537, 539 (7th Cir. 2005). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic, 127 S.Ct. at 1964-65. To state a claim for a breach of contract, plaintiff must allege: "the formation of the contract, the terms of the alleged contract, that the plaintiff has performed his contractual obligations, that the defendant has breached the contract and that the plaintiff has been damaged." Cleland v. Stadt, 670 F.Supp. 814, 817 (N.D. Ill.1987).

Plaintiff has fulfilled all of the above requirements to state a claim. It has alleged, and the defendant does not contest, that it entered into two written contracts with the defendant; that plaintiff performed the services required under the contract; and that defendant has refused to pay. Plaintiff also alleges that defendant breached the contract by not paying plaintiff after it rendered the services required under the contract, and that damages were suffered by the plaintiff as a direct result of defendant's refusal to pay plaintiff for its work.

Defendant argues that plaintiff cannot state a claim because it has not and cannot allege that its services resulted in "any additional reimbursement generated" as required by the contract. Defendant's position appears to be that because it received a "credit" or set-off from the government against other monies owed, as opposed to an actual check or cash, plaintiff's work did not "generate" a reimbursement. The court disagrees with this strained interpretation and holds that the count states a claim.

Defendant next argues that the complaint fails to allege that an intermediary settled the cost reports as required by the contract. Paragraph 16 of the complaint alleges that "[a]fter completion of Plaintiff's review and subsequent settlement of Medicare cost reports under the Phase I and II Contracts, Plaintiff sent the appropriate invoice to Defendant requesting payment of 25% of the additional $31,118,066.00 Medicare settlement recovery." Paragraph 17 alleges that, "Defendant claimed that they did not owe the Plaintiff $7,779,667.00, because they never received any 'actual additional Medicare monies' per the cost report settlements as a result of Plaintiff's contractual activities with Defendant."

Read together, these two paragraphs sufficiently allege that an intermediary settled the cost reports, which defendant then used to negotiate a settlement with the government.

Accordingly, the defendant's motion to dismiss Count I for failure to state a claim is denied.

### Count II—Implied in Fact Contract

Count II alleges a breach of an implied in fact contract. An implied in fact contract differs only slightly from an express contract. "The only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either written or oral, while in the latter their agreement is arrived at by a consideration of their acts and conduct." Barry Mogul and Associates, Inc. v. Terrestris Development Company, 643 N.E.2d 245, 251.

A contract implied in fact cannot coexist with an express contract when they involve the same subject matter. Conway Corp. v. Alpha Distributors, Ltd., 1992 WL 57950 (N.D. Ill.

5

1992), aff'd 993 F.2d 1549 (7th Cir. 1993); see also Gadsby v. Health Ins. Admin., Inc., 168 Ill. App.3d 460, 468-69 (2nd Dist. 1988).

As the court noted in Conway (1992 WL 57950 at *5):

> When an express contract exists between the parties, courts hold the parties to their bargains. This rule prevents a party who made a bad business decision from avoiding a risk he has expressly assumed. This Court believes that the Illinois Supreme Court would find compelling the policy considerations that courts have identified in refusing to allow the coexistence of express and implied in law contracts on the same subject. This Court also believes that the Illinois Supreme Court would conclude that those policy considerations apply with equal force to the coexistence of express and implied in fact contracts.

Given these principles, this court must decide whether the express contract and the contract implied in fact involve the same subject matter. The court concludes that they do. The two counts both allege the same work product, plead identical fact patterns, state that defendant used plaintiff's work product for identical purposes, and ask for an identical amount of damages. In fact, paragraph 22 reincorporates and re-alleges all the paragraphs from Count I of the complaint.

For all of these reasons, defendant's motion to dismiss Count II of the complaint is granted.

### Count 3—Unjust Enrichment/Implied Contract

Count III alleges unjust enrichment and a breach of contract implied in law. Quantum meruit is a quasi-contract theory that compensates plaintiffs for acts of unjust enrichment where one party receives services without giving compensation. Midcoast Aviation, Inc. v. General Elec. Credit Corp., 907 F.2d 732, 737 (7th Cir. 1990). To state a claim for quantum meruit, "the plaintiff must allege that: (1) the plaintiff rendered services; (2) the defendant received the benefit of those services; and (3) the defendant's retention of those services without giving

compensation in exchange will be unjust." Perini Bldg. Co., Inc. v. Univ. of Chicago, 1999 WL 58556 at *2 (N.D. Ill. 1999) (citing Midcoast Aviation, Inc., 907 F.2d at 737).

Plaintiff seeks payment for services rendered to and used by defendant for which it was not compensated. Defendant argues that plaintiff cannot plead a quasi-contractual claim when an express contract already exists. Defendant is wrong. Plaintiff may plead a quasi-contractual claim when it is of a different subject matter than the express contract, Conway, 1993 WL 186307 at *4, *7, as plaintiff alleges here. In Conway the court stated with respect to contracts implied in law (id. at 14):

> The rule is otherwise if the quasi-contractual claim involves different subject matter. Heavy, 116 Ill.Dec. at 786 (citing Board Of Directors Carriage Way Property Owners Association v. Western Nat'l Bank, 94 Ill.Dec. 97, 101 (Ill.App. 1 Dist. 1985). The "different subject matter" exception to the general rule is a slippery concept. In this Court's judgment, the exception is applicable only when the difference in subject matter between the express and alleged implied contract is substantial.

Plaintiff's complaint alleges that it performed services and that the defendant used them for a purpose and subject matter other than that agreed upon in the express contracts. Plaintiff further alleges that defendant used its work product to save itself $800,000,000.00. Plaintiff argues it would be inequitable for defendant to benefit from plaintiff's work product without paying 25% of its value to plaintiff. The court agrees with plaintiff that the difference in subject matter is substantial because it relates to an entirely different transaction for which defendant allegedly received a huge benefit from plaintiff's work product in a manner that plaintiff had not authorized under the contract.

For the foregoing reasons, the court denies defendant's motion to dismiss Count III.

### Count IV—Breach of Illinois Consumer Fraud Act

In Count IV, plaintiff alleges that defendant has violated the ICFA. Defendant argues that the count fails to state a claim under Fed.R.Civ.P. 12(b)(6), and that the count fails to plead fraud with the particularity required under Fed.R.Civ.P. 9(b).

Defendant argues that Count IV fails to state a claim under the ICFA because plaintiff is not a consumer, and because it has not satisfied the "consumer nexus" test by alleging facts to show that the conduct involves trade practices directed to the market generally, or otherwise implicates consumer protection concerns. Athay Products Corp. v. Harris Bank Roselle, 89 F.3d 430, 437 (7th Cir.1996); Duchossois Industries, Inc. v. Crawford & Co., 2001 WL 59031 (N.D.Ill. 2001). Under the Act, a consumer is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). The term "person" includes any business entity or association. 815 ILCS 505/1(c). "Merchandise" includes services. 815 ILCS 505/1(b). Plaintiff is not a consumer as defined by the act because it has not purchased any services for its personal use. 815 ILCS 5051(e). Instead, defendant is the consumer of plaintiff's services because it contracted to pay plaintiff for those services. Consequently, plaintiff is ineligible to obtain relief under this portion of the Act.

Plaintiff pleads alternatively that it falls under the "consumer nexus" test, but this argument also fails. Under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), when a dispute involves two business that are not consumers of each other's products or services, the plaintiff can bring a claim under the ICFA if it meets the "consumer nexus test" by alleging that the challenged conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues. 815 ILCS 505/1; see also Petri v. Gatlin,

N.D. Ill.1997, 997 F.Supp. 956. Plaintiff has no standing under the "consumer nexus test" because defendant is a consumer of plaintiff's services.

Accordingly, defendant's motion to dismiss is granted for Count IV, and the court need not discuss Plaintiff's lack of specificity in regard to Fed. R. Civ. P. 9(b).

**CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss is denied with respect to Counts I (breach of contract) and III (unjust enrichment), and granted with respect to Counts II (implied in fact contract) and IV (Consumer Fraud and Deceptive Business Practices Act). Defendant is directed to answer Counts I and III on or before August 21, 2007. The parties are directed to prepare and file a joint status report on the court's form on or before that date, and appear at a status report August 28, 2007, at 9:00am.

**ENTER:** **August 2, 2007**

_____

**Robert W. Gettleman**
**United States District Judge**